UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VINCENT JENDRZEJCZAK,

                              Plaintiff,

                                                      6:13-CV-1239
v.                                                    (GTS/TWD)

DENNIS WILLIAMS, BRIAN ROE, KELLIE ROE,
and PETER YOUNG,

                              Defendants.
_____

APPEARANCES:

VINCENT JENDRZEJCZAK
13-A-0154
Plaintiff *pro se*
Mid-State Correctional Facility
P.O. Box 13403
Malone, NY 13403


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

        The Clerk has sent Plaintiff Vincent Jendrzejczak's *pro se* Amended Complaint in this

civil rights action brought under 42 U.S.C. § 1983 to the Court for review.  (Dkt. No. 8.)

Plaintiff, who is confined at Watertown Correctional Facility and has not paid the filing fee for

this action, has filed an application to proceed *in forma pauperis.*  (Dkt. No. 2.)  Plaintiff has also

filed a motion for appointment of counsel. (Dkt. No. 7.)

        As to Plaintiff's *in forma pauperis* application, after reviewing the entire file, I find that

Plaintiff has demonstrated economic need and has filed an inmate authorization form.  (Dkt. Nos.

2 and 3.)  Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.  However,

for the reasons that follow, I recommend that the federal claims asserted in Plaintiff's Amended

Complaint (Dkt. No. 8) under § 1983 and 31 U.S.C. 3729, *et seq*. be dismissed for failure to state

a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with leave to amend granted as to all claims

except those specifically identified for dismissal with prejudice.  I further recommend that the

District Court, in its discretion, decline to exercise supplemental jurisdiction over the state law

claims asserted in Plaintiff's Amended Complaint, without prejudice to re-filing in state court

and subject to reconsideration in the event Plaintiff files a Second Amended Complaint.

## I.      ALLEGATIONS IN THE AMENDED COMPLAINT

### A.      The Parties

During the period December 3, 2010, through June of 2011, Plaintiff, a parolee at the

time, was employed by Altamont Program, Inc. ("Altamont").[1] (Dkt. No. 8, at ¶¶ 2, 11.)

Defendants Brian Roe and Kellie Roe (collectively referred to as the "Roes"), were employees at

Altamont and were Plaintiff's supervisors.  *Id*.  at ¶ 1.  Defendant Peter Young ("Young") was

CEO/supervisor at Altamont.  *Id*. at 3.

According to Plaintiff, Altamont had a subcontract with the New York State Office of

---

[1]  Plaintiff's Amended Complaint is devoid of information regarding the nature and business of Altamont.  According to the website for Peter Young Housing, Industries, and Treatment ("PYHIT"), of which the Court takes judicial notice, Altamont Program, Inc. is one of PYHIT's programs.  Altamont "[o]perates educational and vocational programs, job placement, provides housing services, [and] manages properties affiliated with Father Young's programs." *See* http://pyhit.com/programs.  Altamont "[c]ontracts with the NYS Division of Corrections and Community Services to provide transitional housing, case management and other PYHIT services to assist eligible parolees [to] successfully reintegrate."  *Id. See Doron Precision Systems, Inc. v. FAAC, Inc*., 423 F. Supp. 2d 173, 179, n.8 (S.D.N.Y. 2006) ("[A] court may take judicial notice of information publically announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'") (quoting Fed.R.Evid. 201(b)).

General Services ("NYS O.G.S.") that involved Altamont employees performing work of some type at the TenEyck Building, 40 Pearl Street, Albany, New York. *Id*. at ¶ 5. Defendant Brian Williams ("Williams"), a NYS O.G.S. building manager, managed the TenEyck Building. *Id*. at ¶ 22. Williams was responsible for overseeing the Altamont contract for the NYS O.G.S. *Id*. at ¶ 23.

**B.     Brian and Kellie Roe**

1.     Plaintiff Was Forced to Do Personal Work for the Roes

Plaintiff has alleged that beginning on or about December 3, 2010, through June of 2011, Defendants Brian and Kellie Roe, acting individually and in their capacities as supervisors/employees for Altamont and subcontractors/supervisors for NYS O.G.S., instructed Plaintiff to do work for them in their personal home.  (Dkt. No. 8 at ¶ 1.)  The work included such things as assisting with the clean-up from bathroom remodeling; trying to fix a leak in the basement foundation; painting and upgrading the bathroom/laundry room; removing and dismantling the old deck; removing personal clutter and trash from the house; and running personal errands for the Roes' family members. *Id*. According to Plaintiff, the Roes also had him upgrade and repair their rental properties. *Id*.

Plaintiff claims he was always forced to do the work for other than normal consideration and that he was paid with falsified hours from the state contract, or received no compensation at all for doing work. *Id*. at ¶¶ 3-4.  The Roes told Plaintiff that the work being done for them was payback for all they had given him, including a company vehicle, job, etc. *Id.*

2.      Plaintiff Was Forced by the Roes to Punch Time Cards for Employees Who Were Not Working on the TenEyck Building Contract and to Forge Log and Payroll Sheets

According to Plaintiff, during the time period from December 3, 2010, through June of 2011, the Roes illegally and unethically instructed Plaintiff to punch state time cards at the TenEyck Building for employees who were not actually working, as well as to forge log sheets and payroll sheets. *Id*. at ¶ 5. Plaintiff has alleged that the Roes told him that those activities were a responsibility of his job and were for the good of Altamont. *Id*. at ¶ 7.

Plaintiff claims that the Roes secretly compensated him with illegal kickbacks in the form of false hours added to his payroll sheet, resulting in a larger paycheck for his state job function. *Id*. at ¶ 8. The Roes also used threats to call Plaintiff's parole officer, demote him, take back the company vehicle, or evict Plaintiff from rental property owned by the Roes to coerce him to cooperate. *Id*. at ¶¶ 8, 11. Plaintiff engaged in the described conduct over fifty times, and the Roes, acting as his supervisors, used deception, threats, and trickery while failing to disclose to him that the instructed acts were unethical and illegal. *Id*. at ¶ 12. Plaintiff claims to have suffered extreme emotional imbalance, distress, fear, paranoia, and extreme anxiety for his liberty once he fully realized their scheme. *Id*. at ¶ 7. Ultimately, the threats and punishments the Roes are alleged to have used to force Plaintiff to perform illegal acts led him to seek mental health counseling and require medication.

3.      Plaintiff Was Forced to Turn Over his Truck to Brian Roe

Plaintiff claims that on or about December 10, 2010, Brian Roe forced him to turn over ownership of a truck Plaintiff had purchased for a start-up construction company. *Id.* at ¶ 13.

According to Plaintiff, Brian Roe was attempting to defraud the State of New York by not purchasing the specified minimum equipment stated in the Harriman Campus, Albany snow removal contract by instructing Plaintiff and other Altamont employees to lie about the number of employees assigned to the contract and the amount of equipment used. *Id*. at ¶ 14.

Plaintiff alleges that Brian Roe instructed Plaintiff to cash Roe's personal check for three times what Plaintiff had paid for the truck and told Plaintiff that he would reimburse himself the amount of the check from Altamont's petty cash. *Id*. at ¶ 15. Plaintiff was instructed by Brian Roe that after he cashed Roe's check, the money left after covering what Plaintiff had paid for the truck was to be given to Roe, who would in turn give Plaintiff a portion of the profits. *Id*. at ¶ 16. Plaintiff claims that even though the truck was worth much more than he had paid for it, Roe forced him to sell the truck for that amount. *Id*. at ¶ 21. Brian Roe instructed Plaintiff not to discuss the transaction with anyone because he had billed Altamont the amount of the check Plaintiff cashed. *Id*. at ¶ 17. Roe threatened Plaintiff with loss of his position with the snow removal operation if he ever spoke of the purchase price of the truck or told anyone that Roe had taken Plaintiff's personal property for public use without just compensation. *Id*. at ¶ 20.

Brian Roe used Plaintiff's truck as a "show truck" to have to show New York State if there was ever an inspection to ensure there was the right amount of equipment for the contract. *Id*. at ¶ 18. The truck was never used for any snow removal operations. *Id*. at ¶ 19.

### 4. Kellie Roe Entering Plaintiff's Dwelling Without Permission

Plaintiff has alleged that on or about March 29, 2011, Kellie Roe entered his dwelling at 551 Warren Street, Albany, New York, without Plaintiff being present or having given his permission, and invaded his privacy by inspecting his personal property and living space. *Id.* at ¶

30. The dwelling was owned by the Roes, and Plaintiff was in the process of moving out. *Id.* at ¶ 32. Kellie Roe told Plaintiff she wanted to insure that Plaintiff was not selling his electronics for drugs, and that it was her right as his supervisor and landlord to enter his dwelling anytime she saw fit. *Id.* at ¶¶ 31, 33.

### 5. Plaintiff's Termination

Brian Roe terminated Plaintiff's employment with Altamont on June 10, 2011, directly after Plaintiff had informed Roe that he was going to "blow the whistle" on all of the illegal and unethical acts of the Roes, other Altamont employees, and Defendant Williams. *Id.* at ¶ 35.

### C. Peter Young

According to Plaintiff, when he pleaded for assistance in dealing with the Roes' wrongdoing, Defendant Young instructed Plaintiff to cooperate with the Roes and "ride out the storm." *Id.* at ¶¶ 38-40. Young also allowed Kellie Roe to act as Plaintiff's supervisor when her position with Altamont was that of secretary, even after Plaintiff complained to him about it. *Id.* ¶ 41. Plaintiff claims that Young acted in concert with the Roes in terminating his employment on June 10, 2011, and ignored all of Plaintiff's pleas for relief despite Plaintiff's perfect progress records, promotions, and being given the company excellence award. *Id.* at ¶¶ 44-45.

### D. Dennis Williams

Plaintiff has alleged that on March 16, 2011, he spoke with Defendant Williams at Williams' office in the TenEyck Building to make him aware of the fraud and illegal activities being committed by Altamont supervisors Brian and Kellie Roe at their home, rental properties, and the TenEyck Building. *Id.* at ¶ 22. Williams was responsible for making sure that Altamont and its supervisors complied with the rules and standards of Altamont's TenEyck Building

contract with the State.  *Id*. at ¶ 23.

Plaintiff claims that Williams, upon being made aware of the fraud and other illegal acts of the Roes, responded "Don't drop this in my lap.  I'm about to retire."  *Id.* at ¶ 24.  Williams also told Plaintiff to keep the information to himself to protect himself and keep from being terminated.  *Id*. at ¶ 25.  According to Plaintiff, after that, Williams began assisting with the fraud by handwriting hours on the Altamont time cards to keep the State from discovering the errors.  Plaintiff claims that by covering up the Roes' illegal acts reported by Plaintiff, Williams placed him in grave jeopardy.  *Id.* at ¶ 26.  Plaintiff also claims that Williams acted in concert with Brian Roe and Young in terminating Plaintiff's employment.  *Id*. at ¶ 43.

## II.  LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation."  *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted).  A *pro se* complaint should not be dismissed "without

giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    ANALYSIS

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.), *cert. denied*, ___ U.S. ___, 131 S. Ct. 158 (2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."[2] *Am. Mfrs. Mut. Ins.*

---

[2] A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5, 2010 U.S. Dist.

*Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted).   A

plaintiff must therefore allege facts showing that a defendant was either a state actor or a private

party acting under color of state law.  *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d

Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen &

Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States

Constitution regulates only the Government, not private parties, a litigant claiming that his

constitutional rights have been violated must first establish that the challenged conduct

constitutes 'state action.'").  Private actors have been found to engage in "state action" when they

are "willful participant[s] in joint activity with the State or its agents."[3]  *Adickes v. S.H. Kress &

Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).

     In order to state a § 1983 conspiracy claim against a private actor, a plaintiff must do

more than plead in conclusory fashion that a defendant "conspired" with a state actor.

*Ciambriello,* 292 F.3d at 324; *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.

1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the

defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are

properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by

_____

LEXIS 11639, at *19 (N.D.N.Y. Feb. 10, 2010).

    [3]  The Supreme Court has identified other instances where a private party's actions may
be fairly attributed to state action, including: (1) where the challenged action results from the
State's exercise of coercive power; (2) when the State provides significant encouragement, either
overt or covert; (3) when a nominally private entity is controlled by an agency of the State; (4)
when a private entity has been delegated a public function by the State; and (5) when the private
entity is entwined with governmental policies, or the government is entwined in its management
or control.  *See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S.
288, 295 (2001).  The allegations in the Amended Complaint do not fall within any of these other
instances.

specific instances of misconduct.") (citations and internal quotation marks and punctuation omitted), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). Instead, a plaintiff must allege facts showing: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id*. at 324-25.

### A. Thirteenth Amendment Claim that Plaintiff Was Forced to Do Personal Work for the Roes

Plaintiff claims that Defendants Brian and Kellie Roe, acting in their capacities as his supervisors and employees of Altamont and as subcontracted supervisors/employees of NYS O.G.S., violated his rights under the Thirteenth Amendment to the Constitution by forcing him to do work at their home and rental properties and paying him by falsifying hours spent at his state contract job function or not at all. (Dkt. No. 1 at ¶¶ 2-4 and pp. 16-17.)

The Thirteenth Amendment provides in part that "[n]either slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. No private right of action has been found under the Thirteenth Amendment itself. *See City of Memphis v. Greene*, 451 U.S. 100, 128 (1981) (holding that unless there is a violation of legislation enacted under § 2 of the Thirteenth Amendment, there is no violation of the Thirteenth Amendment); *Alma Soc. Inc. v. Mellon*, 601 F.2d 1225, 1237 (2d Cir. 1979) ("The [Supreme] Court has never held that the Amendment itself, unaided by legislation . . . reaches the 'badges and incidents' of slavery as well as the actual conditions of slavery and involuntary

servitude.") (citing *Palmer v. Thompson*, 403 U.S. 217, 226-27 (1971)); *Jones v.* Cawley, No. 10-CV-0712 (TJM), 2010 WL 4235400, at *4, 2010 U.S. Dist. LEXIS 112224, at *12-13 (N.D.N.Y. Oct. 21, 2010) (no private right of action pursuant to the Eleventh Amendment itself).

Accordingly, Plaintiff must proceed under one of the Thirteenth Amendment's implementing statutes. In this case, Plaintiff's constitutional claims are brought under § 1983. However, Plaintiff has failed to allege facts showing that the Roes were either state actors or private parties acting under color of state law, *see Ciambriello*, 292 F.3d at 323, with regard to the alleged violation of the Thirteenth Amendment. There are no factual allegations in the Amended Complaint showing that the Roes were acting in any capacity other than as Plaintiff's supervisors at Altamont when they forced Plaintiff to do work for them and members of their families at other than normal compensation. Altamont's status as a contractor with the State does not make either Altamont or its employees, the Roes, state actors simply because Altamont was being compensated by the State. *See Hamlin v. City of Peekskill Board of Education*, 377 F. Supp. 2d 379, 384 (S.D.N.Y. 2005) ("It is well settled that a state contractor and its employees do not become state actors simply because they are carrying out a state-sponsored program or are being compensated by the State.") (citing *Rendall-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Nor do the allegations in the Complaint make a facially plausible showing that the Roes were "willful participant[s] in joint activity" with State employee, Defendant Williams, in forcing Plaintiff to do the work. *Adickes*, 398 U.S. at 152. Plaintiff alleges only that the Roes paid him for the work by padding his hours on the Altamont contract. (Dkt. No. 1 at ¶¶ 3-4.)

Inasmuch as Plaintiff has failed to allege facts showing that the Roes were acting under

color of state law with regard to Plaintiff's Thirteenth Amendment claim, I recommend that his § 1983 claim for violation of the Thirteenth Amendment (Second Cause of Action) be dismissed with leave to amend granted in deference to Plaintiff's *pro se* status.[4]

### B.    Taking Claims Against Defendant Brian Roe Regarding Plaintiff's Truck

According to Plaintiff, Brian Roe, acting in his capacity as Plaintiff's supervisor and Altamont employee and subcontractor/employee of the NYS O.G.S., forced Plaintiff to sell Roe his truck to Roe for less than it was worth to Plaintiff.  (Dkt. No. 1 at ¶¶ 13, 21.)   Plaintiff claims that Roe did so in order to make it appear to the State, with whom Altamont had contracted for snow removal, that Altamont had more snow removal equipment than it actually did.[5]  *Id*. at ¶ 14. Plaintiff has alleged that Roe overcharged Altamont for the truck and, after giving Plaintiff a share, pocketed the excess over Plaintiff's purchase price.  *Id*. at ¶ 16.  Plaintiff claims that Roe's actions constituted the taking of personal property for public use without just compensation in violation of the Fifth Amendment and denial of due process under the Fourteenth Amendment to the Constitution.

While the Just Compensation Clause of the Fifth Amendment applies to the states as well

---

[4]  It is doubtful that Plaintiff has alleged a violation of the Thirteenth Amendment in any event.  Although he claims there were instances where he was not compensated in any manner for the work, he admits that he was generally compensated for the work by padding his hours on the Altamont contract.  *Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 176 (D. Conn. 2009) ("'[T]o state a claim under the Thirteenth Amendment, a plaintiff must demonstrate that he has been subjected to compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'") (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)). Nonetheless, if Plaintiff is able to allege facts in an amended pleading making a facially plausible showing that the Roes were acting under color of state law in the claimed violation of the Thirteenth Amendment, he should be given the opportunity to do so.

[5]  It appears that the truck may ultimately have been purchased by Altamont since Brian Roe is alleged to have sought reimbursement from Altamont.  (Dkt. No. 1 at ¶ 17.)

as the federal government, *see Brown v. Legal Foundation of Washington*, 538 U.S. 216 (2003), Plaintiff has failed to set forth facts showing that state actor Defendant Williams had any involvement whatsoever in forcing Plaintiff to sell his truck to Roe or Altamont, or that the truck was used for a public purpose. To the contrary, the Complaint alleges that Brian Roe or Altamont bought the truck to deceive the State into believing that Altamont had enough snow removal equipment to perform under a State contract, and the truck was never used for snow removal under the contract. *Id.* at ¶¶ 14, 19.

Furthermore, Plaintiff has alleged no facts suggesting that Brian Roe was acting under color of state law when Roe forced Plaintiff to sell his truck, as is required for a § 1983 claim. *See Hamlin*, 377 F. Supp. 2d at 384 (state contractor and its employees do not become state actors by virtue of doing work for the state). The Complaint is devoid of allegations showing joint action or a conspiracy with Defendant Williams, or any other state actor, regarding the truck. Inasmuch as purely private conduct, no matter how wrongful or discriminatory, does not satisfy the § 1983 under color of state law requirement, Plaintiff has failed to state a claim under the Fourteenth Amendment for violation of his due process rights with respect to the allegedly forced sale of Plaintiff's truck. *See Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50.

In light of the foregoing, I find that Plaintiff has failed to state a claim against Brian Roe for violation of the Fifth or Fourteenth Amendment with regard to his truck and recommend that the claim (Sixth Cause of Action) be dismissed, with leave to amend granted in deference to Plaintiff's *pro se* status.

**C.     Claim Against Kellie Roe for Searching Plaintiff's Dwelling Without Permission**

Plaintiff has alleged that Kellie Roe, acting in her capacity as his supervisor at Altamont and subcontracted supervisor/employee of NYS O.G.S., invaded his personal living space without permission and commenced an illegal search thereby invading his privacy and violating his rights under the First, Ninth, and Fourteenth Amendments to the Constitution.[6]  (Dkt. No. 1 at ¶ 30.)  As with Plaintiff's truck claim against Brian Roe, Plaintiff has failed to allege facts showing that Kellie Roe was acting under color of state law or that she acted jointly with or conspired with a state actor in entering and searching Plaintiff's dwelling.   Therefore, I recommend that Plaintiff's § 1983 claims against Kellie Roe alleging violation of his First and Fourteenth Amendment rights in connection with the alleged wrongful entry and search (Seventh Cause of Action) be dismissed, with leave to amend granted in deference to Plaintiff's *pro se* status, and that his claim under the Ninth Amendment be dismissed with prejudice.

**D.     Claim Against the Roes, Young, and Williams Arising Out of the Roes' Alleged Illegal Payroll Scheme on Altamont's TenEyck Building Contract with NYS O.G.S.**

Plaintiff claims that in addition to padding his hours on the TenEyck Building contract to pay for work he did for the Roes personally, the Roes were engaged in an illegal payroll scheme that involved having Plaintiff punch time cards at the TenEyck Building for Altamont employees not actually working, and forge log sheets and payroll sheets.  (Dkt. No. 1 at ¶ 5.)   According to

_____

[6]  The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." The Ninth Amendment is not an independent source of individual rights but rather a rule of construction. *See Jenkins v. C.I.R.*, 483 F. 3d 90, 92 (2d Cir. 2007).

Plaintiff, the Roes paid him, and he apparently accepted, illegal kickbacks in the form of false hours added to his payroll sheet, resulting in a larger paycheck. *Id*. at ¶ 8.

Plaintiff has alleged that when he went to Altamont CEO Young to seek Young's help in dealing with the Roes' wrongful conduct, Young told him to cooperate and "ride out the storm." *Id*. at ¶¶ 38-40. When Plaintiff went to Defendant Williams to inform him what the Roes were doing, he told Plaintiff not to drop it in his lap because he was about to retire and urged Plaintiff to protect himself to keep from being terminated. *Id*. at ¶¶ 23-24. Williams then, according to Plaintiff, began to handwrite hours on the Altamont time cards to keep the State from discovering the wrongdoing. *Id*. at ¶ 26.

Plaintiff has asserted claims against all of the Defendants with regard to the Roes' illegal scheme.

1. <u>Ninth Amendment Claim Against The Roes</u>

Plaintiff claims that Brian and Kellie Roe violated his Ninth Amendment rights by depriving him of stability of life due to his extreme fear of loss of liberty by propositioning him many times with kickbacks from their illegal payroll scheme and offering him falsified hours on payroll sheets resulting in larger pay checks in order to keep him quiet about the fraud. *Id.* at ¶ 8. Plaintiff does not allege that he ever turned down the offers of falsified hours.

As previously noted, the Ninth Amendment is not an independent source of individual rights but rather a rule of construction. *Jenkins,* 483 F. 3d at 92. Furthermore, the Complaint is devoid of allegations showing that the Roes were acting under color of state law in offering Plaintiff kickbacks and falsified hours to keep him quiet. Therefore, I recommend that Plaintiff's claim under the Ninth Amendment (Fourth Cause of Action) be dismissed with prejudice, since it

cannot be cured by a better pleading.  *See Cuoco*, 222 F.3d at 112.  However, in deference to

Plaintiff's *pro se* status, I further recommend that Plaintiff be granted leave to amend in the event

he is able to state a legally cognizable claim arising out the facts and circumstances upon which

his Fourth Cause of Action is based.

### 2.     Eighth Amendment Claim Against the Roes

Plaintiff contends that Brian and Kellie Roes' threats to call his parole officer, report non-

compliance, terminate his position at the job function, demote him, reclaim his company vehicle

or evict him from rental property owned by the Roes if he did not continue to cooperate in their

fraudulent payroll scheme constituted cruel and inhuman punishment in violation of the Eighth

Amendment to the Constitution.  As with a number of his other claims, Plaintiff has failed to

allege facts indicating that the Roes were acting under color of state law, either as state actors

themselves or as joint actors or conspirators with Defendant Williams or some other state actor,

in making the threats.

Furthermore, it appears from the allegations in the Complaint that Plaintiff has no

cognizable right to Eighth Amendment protection against cruel and unusual punishment because

he does not claim that the alleged threats were part of the punishment imposed upon him for

being convicted of a crime.  *See Bell v. Wolfish,* 441 U.S. 520, 536 n.17 (1979) (Eighth

Amendment comes into play only to evaluate punishment inflicted after determination of guilt

following trial or plea); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (The Eighth Amendment

prohibits the infliction of cruel and inhuman treatment on those convicted of crimes).

Therefore, I recommend that Plaintiff's Eighth Amendment claim for cruel and unusual

punishment against the Roes (Fifth Cause of Action) be dismissed.  I further recommend that in

deference to Plaintiff's *pro se* status, and because he has alleged that he was on parole during the relevant time period, he be granted leave to amend in the extremely unlikely event he is able to state facts showing that the Roes were acting under the color of state law in the violation of his rights under the Eighth Amendment and that the alleged cruel and unusual punishment was part of the punishment imposed upon him for having been convicted of the crime with respect to which he was on parole.  *See Bell v. Wolfish*, 441 U.S. 520, 536 n.17 (1979).

      3.     <u>Fifth, Ninth, and Fourteenth Amendment Claims Against the Roes, Young, and Williams Acting in Concert With Regard to the Roes' Alleged Illegal Payroll Scheme</u>

      a.     <u>Claim Against Williams</u>

Plaintiff claims that after he informed Williams of the Roes' illegal scheme, Williams, in his official capacity as supervisor/building manager for NYS O.G.S., acted in concert with the Roes by aiding and abetting them in concealing their fraud by making handwritten entries on the time cards.  *Id*. at p. 15.  Plaintiff alleges that Williams showed great negligence by failing to report the fraud to his superiors, and acted with total disregard for Plaintiff's life and liberty as well as society's as a whole, thereby contributing to Plaintiff's mental anguish.  *Id*. at p. 16. Plaintiff has alleged civil rights claims under the Fifth, Ninth, and Fourteenth Amendment against Williams.

Even if Williams was a state official, as Plaintiff's Amended Complaint indicates, the Fifth Amendment applies to due process claims against federal actors, not state actors to whom the Fourteenth Amendment Due Process Clause instead applies*.  See Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006) ("[Plaintiff's] citation to the Fifth Amendment is inapposite. [Plaintiff's] due process claims are against the state, not federal actors, and thus the Fourteenth

Amendment, rather than the Fifth Amendment, applies to these claims.") (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). Furthermore, since the Ninth Amendment is not an independent source of individual rights, *see Jenkins*, 483 F.3d at 92, only Plaintiff's Fourteenth Amendment due process claim remains for consideration.

Plaintiff has failed to state a claim against Williams for violation of his right to due process under the Fourteenth Amendment in either his official or individual capacity.[7] In determining whether a state actor has violated the due process clause, a court must determine whether the plaintiff possessed a liberty or property interest and, if so, what process was due before he could be deprived of that interest. *Ciambriello*, 292 F.3d at 313. Plaintiff has not identified either a liberty or property interest of which he was deprived as a result of Williams' efforts to cover-up of the Roes' payroll scheme and alleged negligence in failing to disclose to his superiors what Plaintiff had told him about the scheme.[8]

Given the foregoing, I recommend that Plaintiff's claim against Williams under the Fifth, Ninth, and Fourteenth Amendments, arising out of his failure to protect Plaintiff from mental anguish by aiding in covering up the Roes' wrongdoing rather than reporting it to his superiors

---

[7] Plaintiff seeks only money damages against Defendant Williams in his official capacity. (Dkt. No. 1 at p. 28.) The Eleventh Amendment protects states against suits brought in federal court. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state, *Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006), and bars all money damage claims against state officials acting in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985). Therefore, I recommend that Plaintiff's § 1983 claim for money damages brought against Defendant Williams in his official capacity be dismissed with prejudice on Eleventh Amendment grounds

[8] Negligence is not actionable under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 332 (1986).

(First Cause of Action), be dismissed. I further recommend that dismissal of Plaintiff's claims under the Fifth and Ninth Amendments be with prejudice, but that in deference to his *pro se* status, Plaintiff be granted leave to amend his claim under the Fourteenth Amendment.

b.    <u>Claim Against the Roes and Williams</u>

Plaintiff claims that the Roes, in concert with Williams, acted maliciously and with deception and trickery when they instructed Plaintiff to unknowingly assist them in their illegal payroll scheme. *Id*. at p. 17. Plaintiff alleges that they did so with willful disregard for human life and left Plaintiff fearing for his livelihood and freedom in violation of his rights under the Ninth Amendment. *Id*.

Because the Ninth Amendment is not an independent source of individual rights, *Jenkins,* 483 F. 3d at 92, Plaintiff cannot state a claim under § 1983 for violation of the Amendment. Furthermore, Plaintiff's claim that the Roes acted in concert with Williams in using trickery and deception to get Plaintiff to participate in the payroll scheme directly conflicts with Plaintiff's allegation that he was the one who informed Williams of the scheme in March of 2011, at which point, Plaintiff had been directly involved in carrying out the Roes' alleged wrongful activities for a number of months. Had Plaintiff not already been convinced that the Roes' payroll scheme was wrong, there would have been no reason for him to go to Williams. Therefore, I have disregarded Plaintiff's allegation of concerted action with Williams and find that Plaintiff failed to set forth facts that the Roes were acting under color of state law with regard to the conduct alleged. In light of the foregoing, I recommend that Plaintiff's Ninth Amendment claim (Third Cause of Action) be dismissed with prejudice. However, in deference to Plaintiff's *pro se* status, I further recommend that Plaintiff be granted leave to amend in the event he is able to state a

20

legally cognizable claim arising out the facts and circumstances upon which his Third Cause of Action is based.

<h3 style="text-align:center">c.   <u>Claim Against Young</u></h3>

According to Plaintiff, Defendant Young denied him the fundamental and essential rights of society when he acted in concert with the Roes and Williams in instructing Plaintiff to cooperate with the fraudulent payroll and "ride out the storm" and made no effort to attempt to stop the activities Plaintiff had reported to him, thereby denying Plaintiff's right to due process. *Id*. at 23. Plaintiff also claims that Young denied him due process by allowing Kellie Roe to act as his supervisor when she was only a secretary. *Id*. at 23-23. Plaintiff has asserted his due process claim under the Fifth, Ninth, and Fourteenth Amendments to the Constitution.

Inasmuch as the Fifth Amendment applies to federal, not state, actors, *see Bussey*, 419 F. Supp. 2d at 586, and the Ninth Amendment is not an independent source of rights, *Jenkins*, 483 F.3d at 92, I need only consider Plaintiff's Fourteenth Amendment due process claim against Young. In his Amended Complaint, Plaintiff has identified Young as the CEO of Altamont. (Dkt. No. 1 at ¶ 3.) Plaintiff cannot state a claim against Young under § 1983, no matter how wrongful his conduct, unless he alleges facts showing that Young was a "willful participant" in joint action or a conspiracy with state actor Williams. *See Adickes*, 398 U.S. at 152; *Am Mfrs. Mut. Ins.*, 526 U.S. at 50; *see also Hamlin*, 377 F. Supp. 2d at 384 (state contractor and its employees do not become state actors by virtue of carrying out a state-sponsored program or being compensated by the State).

In order to state a claim under § 1983, a plaintiff must do more than plead in conclusory fashion that a defendant acted in concert with or conspired with a state actor. *See Ciambriello*,

292 F.3d at 324; *Dwares*, 985 F. 2d at 100 (Section 1983 "complaints containing only conclusory, vague, or general allegation . . . [of] conspiracy are properly dismissed."). The sole allegation in the Amended Complaint tying Williams to the allegations asserted against Young, and the Roes with whom Young is also alleged to have acted in concert, is "Defendant Peter Young also acted in concert with Defendants Dennis Williams, Brian Roe, and Kelly Roe . . . ." *Id*. at p. 23. That allegation is inadequate to support a claim against Young under § 1983, and I recommend that Plaintiff's Fifth, Ninth, and Fourteenth Amendment claims against Young (Ninth Cause of Action) be dismissed. I further recommend that dismissal of Plaintiff's claims under the Fifth and Ninth Amendments be with prejudice, but that in deference to his *pro se* status, Plaintiff be granted leave to amend his claim under the Fourteenth Amendment.

## E.  Termination of Employment Claims Against Defendants

According to Plaintiff, Brian Roe terminated his employment with Altamont in retaliation for Plaintiff's decision to "blow the whistle" on all of the unethical acts of the Roes, other Altamont employees, and Defendant Williams. (Dkt. No. 1 at ¶¶ 34-35.) Plaintiff has alleged in conclusory fashion that Defendants Young, Williams and Kellie Roe acted in concert with Brian Roe in terminating Plaintiff's employment. *Id*. at ¶¶ 37, 43 and pp. 22-23. Plaintiff has asserted § 1983 claims against Defendants for violation of his rights under the First, Fifth, Eighth, Ninth, and Fourteenth Amendments of the Constitution, and has also alleged a violation of 31 U.S.C. § 3730.[9]

_____

[9] Plaintiff's § 1983 claims under the Fifth, Eighth, and Ninth Amendments fail to state a claim. *See Bussey*, 419 F. Supp. 2d 586; *Jenkins*, 483 F.3d at 92; *Bell*, 441 U.S. at 536 n.17. Plaintiff allegations under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*. also fail to state a claim. 31 U.S.C. § 3730, the provision cited by Plaintiff in his Amended Complaint, provides in part in subsection (h) that "[a]ny employee who is . . . discharged . . . by his or her

An individual may have a protected property interest in private employment. *Green v. McElroy*, 360 U.S. 474, 492 (1959) ("the right to hold a specific private employment and to follow a chosen profession free from unreasonable governmental interference comes with the 'liberty' and 'property' concepts of the Fifth Amendment"). When a private party is deprived of his employment through governmental conduct, the nature of the interest at stake is a property interest entitled to due process protection under the Fourteenth Amendment. *See Merritt v. Mackey*, 827 F.2d 1368, 1370-71 (9th Cir. 1987) (citing *Green*, 360 U.S. at 493 n. 22).

Unlike the Fourteenth Amendment, a First Amendment retaliation claim does not require a plaintiff to allege a protectable property interest in employment. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The government may not deny a benefit to a person on a basis that infringes upon his constitutional interest in freedom of speech. *Id*.

Plaintiff's § 1983 claims for violation of his First and Fourteenth Amendment rights against the Roes and Young, all private parties, are dependent upon a showing that they were acting under color of state law – wilfully participating in joint activity or conspiring with state actor Williams, or coerced by him – in terminating Plaintiff's employment because Plaintiff intended to blow the whistle on Defendants' wrongdoing. *See Adickes*, 398 U.S. at 152. Plaintiff's conclusory allegations that Williams was acting in concert with the Roes and Young in terminating Plaintiff's employment are inadequate to make a facially plausible showing that the

---

employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole." 31 U.S.C. § 3730. Because the federal FCA applies to the presentation of false or fraudulent claims to the United States Government or a member of the United States Armed Forces, not state governments, *see* § 3729, I recommend that Plaintiff's claims under the federal FCA be dismissed with prejudice.

Roes and Young conspired with Williams to terminate Plaintiff's employment or were coerced by Williams to do so. (Dkt. No. 1 at ¶¶ 37, 43 and pp. 22-23.) *See Dwares*, 985 F.2d at 100 ("conclusory, vague, or general allegations . . . of conspiracy to deprive plaintiff of his constitutional rights are properly dismissed."). Plaintiff's conclusory allegations are also insufficient to state a claim against Williams himself with respect to the termination of Plaintiff's employment. *See Iqbal*, 556 U.S. at 678 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In light of Plaintiff's failure to adequately allege that the Roes and Young were acting under color of state law and that Williams was involved in the termination, I recommend that Plaintiff's claims under the First, Fifth, Ninth, and Fourteenth Amendment with respect to the termination of his employment (Eighth and Tenth Causes of Action) be dismissed. I further recommend that dismissal of Plaintiff's claims under the Fifth and Ninth Amendments be with prejudice, but that in deference to his *pro se* status, Plaintiff be granted leave to amend his claims under the First and Fourteenth Amendments.

## F.    Plaintiff's State Law Claims

Plaintiff's Amended Complaint, construed liberally, arguably asserts state law claims against Defendants for fraud, negligence, bribery, wrongful termination of employment, as well as a possible whistle blower claim under New York State's version of the FCA, New York State Finance Law§187, *et seq*. (Dkt. No. 1 at pp. 15-18, 21-25.) Inasmuch as I have recommended that all of Plaintiff's federal claims be dismissed, with leave to amend as to a number of claims, I also recommend that at this point, the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, without prejudice to re-filing in state court and subject to

reconsideration in the event Plaintiff files a second amended complaint. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

### G.    Plaintiff's Motion for Appointment of Counsel

Plaintiff has moved for appointment of counsel.  However, a more fully developed record will be necessary before I can assess whether counsel should be appointed. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel).  Moreover, this assessment must await the filing of any amended complaint Plaintiff may be granted leave to file.  Therefore, the motion is denied, without prejudice.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 8) be dismissed in its entirety as follows:

1.    Plaintiff's claims under 42 U.S.C. § 1983 and 31 U.S.C. § 3729, *et seq*. be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and that the dismissal be with leave to amend, except that:

    a.    Plaintiff's official capacity claim for money damages against Defendant Williams be dismissed with prejudice on Eleventh Amendment grounds;

    b.    Plaintiff's Fifth and Ninth Amendment claims against Defendant Williams in his First Cause of Action be dismissed with prejudice;

  c.  Plaintiff's Ninth Amendment claim against Defendants Brian and Kellie Roe in his Third Cause of Action be dismissed with prejudice, but that Plaintiff be granted leave to amend in the event he is able to state a legally cognizable claim arising out of the facts and circumstance upon which his Third Cause of Action is based;

  d.  Plaintiff's Ninth Amendment claim against Defendants Brian and Kellie Roe in his Fourth Cause of Action be dismissed with prejudice, but that Plaintiff be granted leave to amend in the event he is able to state a legally cognizable claim arising out of the facts and circumstance upon which his Fourth Cause of Action is based;

  e.  Plaintiff's Ninth Amendment claim against Defendant Kellie Roe in his Seventh Cause of Action be dismissed with prejudice;

  f.  Plaintiff's Fifth and Ninth Amendment claims against Defendants in his Eighth and Ninth Causes of Action be dismissed with prejudice;

2. Plaintiff's claims under 31 U.S.C. § 3729, *et. seq*. be dismissed with prejudice; and

3. The Court exercise its discretion to decline to exercise supplemental jurisdiction over Plaintiff's state law claims, without prejudice to re-filing in state court and subject to reconsideration in the event Plaintiff files a second amended complaint; and it is hereby

  **ORDERED** that Plaintiff's motion for appointment of counsel is **DENIED** without prejudice; and it is further

  **ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. **<u>Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.</u>** Plaintiff shall also comply with any requests by the Clerk's Office for

any documents that are necessary to maintain this action.  All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

ORDERED that the Clerk serve on Plaintiff a copy of this Order and Report-Recommendation, along with a copy of the unpublished decisions in *O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948 (N.D.N.Y. Feb. 10, 2010) and *Jones v. Cawley*, No. 10-CV-0712 (TJM), 2010 WL 4235400, at *4 (N.D.N.Y. Oct. 21, 2010).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: February 4, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge